The New York and Brooklyn Ferry Company, Appellant,
  *v.* The Mayor, Aldermen and Commonalty of the City
  of New York, Respondent.

In 1867 defendant granted to plaintiff the right to operate a ferry, and exe-
cuted to it a lease of certain slips and bulkheads for the term of ten
years, by the terms of which plaintiff was to erect the necessary ferry
fixtures and to yield them up to defendant at the end of the term, sub-
ject, however, to the right reserved to such a lessee by the provision of
the city charter of 1857 (§ 41, chap. 446, Laws of 1857), requiring all
persons acquiring any ferry lease to purchase at a fair valuation the boats,
buildings and other property of a former lessee necessary for the purposes
of such ferry grant.   Subsequently, by agreement between the parties,
plaintiff surrendered the premises covered by the lease and accepted in
lieu thereof a lease of other premises for the balance of the original term;
in and by which defendant covenanted that in case a new lease should not
be granted to plaintiff, defendant would pay for the buildings and ferry
fixtures erected by plaintiff on the demised premises, "in the manner
provided for in and by the said first-mentioned recited indenture or
lease."   At the termination of this lease plaintiff demanded a renewal
at the same rental, which defendant refused, and a lease was exe-
cuted to another ferry company at an increased rental.   In an action
upon said covenant to recover the value of the buildings and ferry fix-
tures erected by plaintiff, *held*, that the rights of the parties were not
affected by the revised charter of 1870 (Chap. 137, Laws of 1870), and
that defendant was under no obligation to renew the lease at the same
rental as provided for by the old lease.
It appeared that the ferry company to whom the new lease was executed
was organized by plaintiff's officers for its benefit and that of its stock-
holders.  *Held*, that in effect the new lease was issued to plaintiff, it
having become its own successor under a new name; and so, it had no
cause of action.

(Argued April 25, 1895; decided May 21, 1895.)

Appeal from judgment of the General Term of the
Supreme Court in the first judicial department, entered upon
an order made December 14, 1894, which affirmed a judgment
in favor of defendant entered upon a verdict, and also affirmed
an order denying a motion for a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*John M. Scribner* for appellant. The defendant has no right to interpose, as a defense, want of authority in its officers to make the contract in question. (*W. A. Co.* v. *Barlow*, 63 N. Y. 62, 70; *R. W. Co.* v. *McCarthy*, 6 Otto, 267; *Woodruff* v. *E. R. Co.*, 93 N. Y. 619; *A. S. Bank* v. *Savery*, 82 id. 307; *R. L. R. Co.* v. *Roach*, 97 id. 381; *In re McGraw*, 111 id. 106; *Mayor, etc.,* v. *Huntington*, 114 id. 631, 634; *H. & G. M. Co.* v. *H. & W. M. Co.*, 127 id. 252, 260; *City of Buffalo* v. *Balcom*, 134 id. 532, 536; *Linkhauf* v. *Lombard*, 137 id. 417, 423; *Mayor, etc.,* v. *Sonneborn*, 113 id. 425, 426.) The commissioners of the sinking fund had power and authority under the law to make the agreement of February 13, 1871, and the lease of April 4, 1871. (Laws of 1869, chap. 876, § 8; *Mayor, etc.,* v. *Sonneborn*, 113 N. Y. 425; *In re Mayer*, 50 id. 504, 506; *People* v. *Briggs*, Id. 553; *Conner* v. *Mayor, etc,* 5 id. 285; *S. M. Ins. Co.* v. *Mayor, etc.*, 8 id. 241; *People* v. *McCann*, 16 id. 58; *Brewster* v. *City of Syracuse*, 19 id. 116; *In re Volkening*, 52 id. 650; *Sullivan* v. *Mayor, etc.*, 53 id. 652; *In re Van Antwerp*, 56 id. 261; *People* v. *Dudley*, 58 id. 323; *People* v. *Quigg*, 59 id. 83; *Harris* v. *People*, Id. 601; *Werzler* v. *People*, 58 id. 525; *Devlin* v. *Mayor, etc.*, 63 id. 8; *In re P. P. & C. I. R. R. Co.*, 67 id. 373; *People* v. *Banks*, Id. 568; *Gloversville* v. *Howell*, 70 id. 289; *In re Sackett St.*, 74 id. 95; *People ex rel.* v. *Livingston*, 79 id. 279; *Sweet* v. *B., etc., R. R. Co.*, Id. 293; *Tifft* v. *City of Buffalo*, 82 id. 204; *Lewenthal* v. *Mayor, etc.*, 61 Barb. 511; *Sweet* v. *City of Syracuse*, 129 N. Y. 331, 332; *Curtin* v. *Barton*, 139 id. 513; *In re Mayor, etc.*, 99 id. 576, 577; *In re Knaust*, 101 id. 194; *Bd. Water Comrs.* v. *Dwight*, 101 id. 11; *Cole* v. *State*, 102 id. 58; *W. I. B. Co.* v. *Town of Attica*, 119 id. 210; *Astor* v. *A. R. Co.*, 113 id. 109, 110; *Van Brunt* v. *Town of Flatbush*, 128 id. 54, 55; *N. I. B. Co.* v. *Attica*, 49 Hun, 517; *Gaston* v. *Meek*, 42 N. Y. 186; *People* v. *Bd. Suprs.*, 43 id. 10; *Huber* v. *People*, 49 id. 132; *Newell* v. *People*, 7 id. 97; *Quinn* v. *Mayor, etc.*, 63 Barb. 601.) At the times when the agreement of February 13, 1871, and the.

lease of April 4, 1871, were made the commissioners of the
dock department had no authority over the subject. (Laws
of 1870, chap. 137, § 99; Laws of 1871, chap. 574, § 6.)    The
court erred in charging the jury that defendant was entitled
to recover the value of the use and occupation of the demised
premises for the period from November 1, 1877, to June 14,
1878, and plaintiff's exception was well taken. (*McFarlan*
v. *Watson*, 3 N. Y. 288; *Jennings* v. *Alexander*, 1 Hilt.
154; *Sylvester* v. *Ralston*, 31 Barb. 286; *Thompson* v.
*Bower*, 60 id. 463; *Preston* v. *Hawley*, 101 N. Y. 588;
*Collyer* v. *Collyer*, 113 id. 446.)

*James C. Carter* for respondents.    The lease containing
the covenant upon which the action was brought, as well as
the covenants on the part of the city of New York in the
quadrupartite agreement of February 13, 1871, have the sanc-
tion only of the commissioners of the sinking fund.    Neither
of these covenants has any validity unless these officials were
authorized by law to bind the city to such engagements.
(Laws of 1857, p. 886, § 38.)    No other authority to make the
covenant sued upon can be asserted for these commissioners,
except such as may be contained in section 8 of chapter 876
of the Laws of 1869 (Vol. 2, p. 2132).    The provisions of this
section are unconstitutional and void, because contained in a
local act relating to another subject and not expressed in the
title. (*In re Astor*, 50 N. Y. 366; *In re Mayor*, Id. 504;
*People ex rel.* v. *Briggs*, Id. 553; *S. M. Ins. Co.* v. *Mayor,
etc.*, 8 id. 241; *Huber* v. *People*, 49 id. 132; *Gaskin* v.
*Meek*, 42 id. 186; *People* v. *Allen*, Id. 404.)    If the com-
missioners did thus acquire authority to make the covenant in
question, it was only by way of incident to the power to make
leases; and this power, with all its incidents, they lost, before
the execution of the lease or of the quadrupartite agreement
on which it was based. (*Mayor, etc.,* v. *N. Y. & S. I. F.
Co.*, 8 J. & S. 232.)    If the 8th section of the act of 1869
were valid and unaffected by subsequent legislation, it would
not be sufficient for the plaintiffs.    It gives, indeed, the power

to lease, but nothing more. It falls far short of conferring authority to bind the city to the covenant which forms the basis of this suit. (Laws of 1857, p. 888, §§ 37, 38, 41; *Nixon* v. *Hyserott*, 5 Johns. 58; Dillon on Mun. Corp. § 445.) There is still another fatal objection to this action. Whoever has the burden of satisfying a judicial tribunal concerning the meaning of this vague covenant must fail. It is void for uncertainty. (*Mayor, etc.,* v. *N. Y. & S. I. F. Co.,* 8 J. & S. 232.)

Haight, J. This action was brought to recover the value of certain buildings and ferry fixtures erected by the plaintiff at the foot of Roosevelt street, in the city of New York.

It appears that on the 26th day of November, 1867, the defendant granted to the plaintiff the right to operate a ferry across the East river from the foot of Roosevelt street to South Seventh street, in the city of Brooklyn, together with a lease of certain slips and bulkheads for the term of ten years, or until November first, 1877, at the annual rental of $4,900; that in and by the terms of the lease the plaintiff at its own proper cost and charges was to build and erect necessary bridges, floats and other fixtures at each landing place of the ferry and to keep the same in repair, together with the necessary docks and piers, and at the termination of the lease to surrender and yield up the said ferry, together with the bulkheads, piers, docks, floats, bridges, fixtures and improvements which may have been erected for the use of the ferry at the foot of Roosevelt street in good order and condition, subject, however, to the rights reserved to the plaintiff by the 41st section of the charter of 1857, the provisions of which are as follows: "All persons acquiring any ferry lease or other franchise or grant under the provisions of this act shall be required to purchase at a fair appraised valuation the boats, buildings and other property of the former lessees or grantees actually necessary for the purpose of such ferry grant or franchise."

It further appears that one John English also held a lease from the defendants of a pier in the East river adjoining that

leased to the plaintiff at the foot of Roosevelt street at an annual rental of $1,500 per year, which he assigned to the plaintiff, who used the same in connection with the ferry rights acquired in and by the first-mentioned lease, and that in 1871 the New York and Brooklyn Bridge Company entered into negotiations with the plaintiff, defendant and one John L. Brown, who occupied adjoining premises, to acquire the lands so leased and held by the plaintiff, for the purpose of locating thereon the New York end of the bridge, which negotiations resulted in what is known as the quadrupartite agreement, in which the plaintiff agreed to release the premises occupied by it as a landing place for the ferry, and to accept in lieu thereof certain other premises adjoining, including those occupied by Brown, and for the purpose of effecting such change it was paid the sum of $80,000 with which to construct buildings, bridges and other necessary ferry fixtures upon the abutting piers in the place of those existing upon the piers released to the bridge company. Pursuant to this agreement, and on the 4th day of April, 1871, the mayor, aldermen and commonalty of the city of New York, as party of the first part, made and executed to the plaintiff, as party of the second part, a lease of the premises described in the quadrupartite agreement, taken in place of those covered by the former lease for the unexpired term of that lease, at the annual rental of $6,400. In and by this lease it was provided, "and the said party of the first part, for itself, its successors and assigns, covenants and agrees by these presents to and with the said party of the second part, its successors and assigns, that the buildings and ferry fixtures that shall be put upon the hereby-granted and demised premises shall be paid for by the said party of the first part, its successors and assigns, to the said party of the second part, its successors and assigns, if a new lease shall not be granted to the said party of the second part, its successors and assigns, in the manner provided for in and by the said first-mentioned recited indenture or lease." At the termination of this lease the plaintiff demanded from the officers of the city a renewal thereof at the same rental, which was

refused, and thereafter the ferry grant and lease was made to the New York Ferry Company for the term of five years at the annual rental of $15,050 per year. This action was brought under the above-quoted covenant.

The first question presented for our determination is as to whether the plaintiff was entitled to a renewal of the lease at the same rental, or in default thereof to recover pay for the buildings and ferry fixtures constructed by it upon the premises referred to. This question involves a construction of the provision of the lease. Does the phrase " in the manner provided for in and by the said first-mentioned and recited indenture of lease " relate to the provision with reference to the new lease which immediately precedes it, or does it relate back to the provision with reference to the payment for the buildings and ferry fixtures ? In answering this question we should look for the intention of the contracting parties as disclosed from the surrounding circumstances and the history of the transaction. By referring to the charter of 1857, we find that ferry rights were required to be let to the highest bidder for a term not to exceed ten years, and under it the only way in which the ferry company could have a renewal of its lease was by again becoming the highest bidder therefor. No agreement could, therefore, be entered into for a renewal at the same rental, but instead thereof we have the provisions of the 41st section in which the ferry company was awarded the fair appraised valuation of its buildings and fixtures, which was required to be paid for by the new lessees. These provisions were omitted by the revision of the charter in 1870 (Chap. 137), but we apprehend the rights of the parties remained unchanged, for the charter of 1857 and the provisions of section 41 were distinctly referred to and made a part of the lease of 1867. We thus have the policy of the city distinctly indicated. It was to grant rights to operate a ferry together with a lease of the necessary piers for landing purposes for a limited term of years to the highest bidder, leaving it to the lessee to construct and maintain the necessary buildings and ferry fixtures, undertaking, however,

that he shall be paid therefor the fair appraised value at the expiration of his lease by the persons or company succeeding thereto in case he should fail to acquire a new lease. We find nothing in the provisions of the revision of 1870 that indicates a change of policy in this regard. Chapter 876 of the Laws of 1869 was not repealed. By it the granting of ferry rights was transferred to another department of the city government; but nothing is found in the provisions of that act or of the new revision authorizing the city, or any of the officials thereof, to enter into the business of constructing buildings or ferry fixtures upon the piers or docks owned and controlled by it, or to continue leases at the same rental, rather such an idea would seem to be negatived by the fact that the statute still retains the provision prohibiting a lease for a longer term than ten years, thus leaving it in the hands of the officers then charged with the duty of letting to determine the amount that should be demanded and the conditions imposed. There is nothing in the provisions of the old lease specifying or providing the manner or conditions upon which a renewal lease should be given. There is, however, a provision relating to the manner in which the lessee shall be paid for his buildings and fixtures, from all of which we conclude that the phrase alluded to was intended to refer to the payment for the buildings and fixtures and not to the renewal of the lease. So construing the covenant, it follows that the defendant was under no obligation to renew the plaintiff's lease at the same rental paid under the old lease.

It remains to be seen whether a new lease was in effect issued to the plaintiff. This question was carefully tried and submitted to the jury, who found in favor of the defendant. Our reading of the appeal book leads us to conclude that this verdict is well sustained by the evidence. The new lease was issued to the New York Ferry Company, a corporation with a different name, but it was organized by the officers of the plaintiff evidently for its benefit and that of its stockholders and for the purpose of enabling the plaintiff to maintain this action. It consequently follows that as yet no breach of the

covenant sued upon has been shown. The plaintiff in effect became its own successor under a new name and as such has no cause of action for the buildings and fixtures in question during the lifetime of its new lease.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.